In the Matter of the Estate of OLAV RAMBERG, Deceased.

Surrogate's Court, Kings County, June 11, 1940.

*Thomas J. Snee*, for William V. Elliott, as public administrator of Kings county, petitioner.

*Henry M. Schneiderman*, for the Norwegian Consul General, appearing on behalf of Norwegian nationals, distributees, respondents.

*A. Lionel Levy*, special guardian for unknown distributees.

*John J. Bennett, Jr., Attorney-General*, for the People of the State of New York.

WINGATE, S. The present proceeding presents another of the unfortunate consequences of the current European war. It is a matter of common knowledge that the Kingdom of Norway has been overrun by the German armies, that its territory is now almost wholly within German control and that its government has fled to another country.

The distributees of this estate are three brothers and a sister of the decedent, all of whom reside in Norway. They are represented in this proceeding by the Consul General of Norway, who asserts that their distributive shares should be paid over to him.

He cites as his authority the final paragraph of article XXIV of the treaty between the United States and Norway which was proclaimed September 15, 1932. This reads: " A consular officer of either High Contracting Party may in behalf of his non-resident countrymen collect and receipt for their distributive shares derived from estates in process of probate or accruing under the provisions of so-called Workmen's Compensation Laws or other like statutes, *for transmission* through channels prescribed by his Government *to the proper distributees.*" (Italics supplied.)

It might be possible to dispose of this application by the Consul on grounds similar to those discussed in *Matter of Weidberg* (172 Misc. 524, 529) by pointing out that, under present conditions, he does not possess the power to transmit to the distributees, since he is not recognized by the authority which has control of the territory in which they reside. There is, however, an additional consideration which must inevitably compel the same result.

The Consul states correctly that, under ordinary circumstances, treaties are absolutely controlling on the courts of the several States. The reason is that, pursuant to section 2 of article 2 of

the United States Constitution, the sole authority to make treaties is accorded to the Federal government, wherefore, any treaty, when made, becomes in effect a statute enacted by that portion of the government which possesses the sole regulatory authority in respect of such matters.

The authority which possesses the power to create has, however, the ability to destroy, and this is precisely what has occurred in this connection in respect at least of the italicized portion of the foregoing excerpt from the Norwegian treaty.

By joint resolution (Pub. Res. No. 69, chap. 185, 76th Cong., 3d Sess. [1940]) the present Congress amended the first sentence of subdivision (b) of section 5 of the act of October 6, 1917 (40 U. S. Stat. at Large, 411), to read as follows: " During time of war or during any other period of National emergency declared by the President, the President may, * * * regulate, or prohibit, * * * any transactions in foreign exchange, transfers of credit between or payments by or to banking institutions * * * and any transfer, withdrawal or exportation of, or dealing 'in, any evidences of indebtedness or evidences of ownership of property in which any foreign state or a national or political subdivision thereof, * * * has any interest, by any person within the United States * * *."

The same joint resolution expressly approved and confirmed Executive Order No. 8389 of April 10, 1940, and the regulations issued thereunder. This executive order, as amended May 10, 1940, by Executive Order No. 8405, expressly prohibited, in the absence of special licenses issued by the Secretary of Treasury, " if involving property in which Norway or Denmark or any national thereof has at any time on or since April 8, 1940, had any interest of any nature whatsoever, direct or indirect, or if involving property in which the Netherlands, Belgium or Luxembourg or any national thereof has at any time on or since May 10, 1940, had any interest of any nature whatsoever, direct or indirect. * * * A. All transfers of credit between any banking institutions within the United States; and all transfers of credit between any banking institution within the United States and any banking institution outside the United States * * *; B. All payments by or to any banking institution within the United States; C. All transactions in foreign exchange by any person within the United States; * * * E. All transfers, withdrawals or exportations of, or dealings in, any evidences of indebtedness or evidences of ownership of property by any person within the United States; * * *."

The language of this executive order is lucid and its effect, for present purposes, self-evident. It prohibits in unmistakable terms the payment of the distributive shares in this estate either to the

Norwegian nationals themselves or to the Consul General of Norway on their behalf.

Since the administration of the estate is now complete and the administrator is entitled to his discharge, the only available method of disposition of these sums is to direct their payment to the city treasurer to the credit of the distributees, respectively, in accordance with the provisions of section 269 of the Surrogate's Court Act.

Enter decree on notice in conformity herewith.