In the Matter of the Estate of JOSEPH PLEMICH, or BLEMITCH, Deceased.

Surrogate's Court, Kings County, May 21, 1941.

*Thomas J. Snee,* for William V. Elliott, public administrator, petitioner.

*Kremer & Leavitt,* for the Royal Hungarian Consul General, objectant.

WINGATE, S.   A distributee of this estate is a Hungarian national residing in Budapest, Hungary.   He is represented in this proceeding by the Hungarian Consul General, acting in his official capacity. The latter has interposed objections to the entry of a decree of settlement and distribution which, contains a direction that the share of his principal shall be paid into the hands of the city treasurer.

The Consul admits that Executive Order No. 8389, as amended, applies to remittances to Hungary.   This order and its effect were considered in *Matter of Ramberg* (174 Misc. 306) which concerned a similar application by the Consul General of Norway on behalf of his nationals.   The court observed in this case (at p. 308): " The language of this executive order is lucid and its effect, for present purposes, self-evident.   It prohibits in unmistakable terms the payment of the distributive shares in this estate either to the Norwegian nationals themselves or to the Consul General of Norway on their behalf."

The present applicant does not attempt to distinguish this case, in fact he wholly ignores it.   Instead, he places his reliance on

the language of General License No. 32, issued by the Treasury Department on February 1, 1941. So far as presently pertinent, this reads:

" A general license is hereby granted authorizing remittances by any individual through any bank to any individual within any foreign country designated in Executive Order No. 8389, as amended * * * provided the following terms and conditions are complied with:

" (1) Such remittances are made only for the necessary living expenses of the payee and his household and do not exceed $100 in any one calendar month to any one household * * *."

The natural interpretation of this exception to the general " freezing " effect of the Executive order is that transmission, to the limited extent contemplated, is permissible only where the sum transmitted is required or essential for the defrayal of the living expenses of the payee. To come within the exception, the burden of proof is imposed upon the person asserting the right, of demonstrating as a matter of fact that the sum proposed to be transmitted is " necessary " for the defrayal of such living expenses. No indication thereof has here been tendered. Since the burden of proof in this regard is imposed on the applicant no inference of the existence of such a condition may be indulged.

Article XXI of the existing treaty between Hungary and the United States provides that a consular officer may receive distributive shares of estates in which his nationals are interested " provided he remit any funds so received through the appropriate agencies of his Government to the proper distributees * * *." By reason of the freezing order and the absence of demonstration that this distributee comes within the exception of General License No. 32, there is an inference that if the share were paid to the Consul it would not reach the distributee himself. This brings into operation the provisions of section 269 of the Surrogate's Court Act which authorizes the surrogate to direct payment to the city treasurer for the account of the distributee. (*Matter of Weidberg*, 172 Misc. 524, 528; *Matter of Landau*, Id. 651, 653; *Matter of Steiner*, Id. 950, 951; *Matter of Bold*, 173 id. 545, 551; Butler, New York Surrogate Law & Practice, § 2897.)

The objection to the decree will, accordingly, be overruled.

Enter decree in conformity herewith.